**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. CV-20-1602

RCR Farms, LLC

      Plaintiff,

v.

FEDERAL CROP INSURANCE CORPORATION,

      Defendant.

---

**COMPLAINT FOR JUDICIAL REVIEW AND DECLARATORY RELIEF**

---

      Plaintiff, RCR Farms, LLC ("RCR Farms"), states as follows for its Complaint for Judicial Review and Declaratory Relief, against the Federal Crop Insurance Corporation ("FCIC").

<u>**Parties**</u>

      1.    RCR Farms is a limited liability company with its principal place of business in Bent County, CO.

      2.    The FCIC is a wholly owned government corporation within the United States Department of Agriculture ("USDA"). *See* 7 U.S.C. § 1503.

<u>**Jurisdiction and Venue**</u>

      3.    This Court has jurisdiction pursuant to 7 U.S.C. § 1508 and 5 U.S.C. §§ 701-06. Venue is also proper pursuant to 7 U.S.C. § 1508(j)(2) and 28 U.S.C. § 1391.

**Background**

4.      Pursuant to the Federal Crop Insurance Act, 7 U.S.C. §§ 1501 *et seq.*, crop insurance is offered through private approved insurance providers ("AIPs") and reinsured and regulated by the FCIC, which in turn is operated and managed by the Risk Management Agency ("RMA").

5.      A common variety of insurance offered pursuant to the Act is a Multiple Peril Crop Insurance ("MPCI") Policy.  Such policies base their premiums, insurance guaranty and indemnity on a producer's historical yields.  The goal of this type of policy is to insure a producer from yield losses due to natural causes (e.g., drought), using that producer's actual production history ("APH") as a baseline. The APH is set forth in a database of a minimum of four and a maximum of ten years' yields, and is updated each subsequent crop year. 7 C.F.R. § 400.55(a).  The database will contain the producer's actual yields (except for certain scenarios where there are fewer than four years' worth of yields), and the APH yield is the simple average of the actual yields.  *See* 7 C.F.R. § 400.55(b), *esp.* 7 C.F.R. § 400.55(b)(5).

6.      RCR Farms is a farming operation with land in Bent County, Colorado. Among other things, RCR Farms planted approximately 2,500 insured acres of irrigated corn for the 2018 Crop Year (the "Corn Acres").

7.      RCR Farms elected to insure its crop with an MPCI policy with a Revenue Protection ("RP") endorsement (the "Policy"), which it purchased from NAU County Insurance ("NAU").

8.  Prior to planting in 2018, RCR Farms reviewed the below average snow pack and canal storage levels, as well as its own soil profile. While RCR Farms' soil profile was good,

justifying planting all of the acres, RCR Farms did make the determination that it should decrease its planting density to allow for more water to be utilized per plant. This is recognized by agricultural experts, including Andy Heggenstaller, the Head of Agronomy for US Seeds at Syngenta (the owner of the Golden Harvest brand of seeds utilized by RCR Farms). In a letter provided by Mr. Heggenstaller, he wrote:

> Syngenta research indicates that lower planting populations are generally more suitable for water-limited locations, while higher planting populations are more desirable for fully irrigated and non-water limited locations.

9.       For 2018, even FCIC (through the Topeka Regional Office, or "TRO", of the RMA) recognized the likelihood of significant water limitations for RCR Farms' crop during the planting period, stating "[s]upporting documentation asserts that not only would your water be reduced by the canal company, but the area was in a D2-D3 drought during the planting window."

10.      RCR Farms worked with CropQuest – its agronomy consultant – which performed an evaluation of the soil profile, geography and history of every field in the operation to derive the optimal seed variety and seeding rate. These rates varied greatly, both field-to-field as well as within fields. While these seeding rates were lower than in years past, they still provided a target yield *above* the yield used to determine the production guarantee. Consequently, RCR Farms' 2018 seeding rates qualify as a "good farming practice" pursuant to Section 1 of the Common Crop Insurance Provisions (the "CCIP").

11.      Also prior to planting, RCR Farms conducted weed control consistent with good farming practices. RCR utilized a pre-emergent weed control measure of spraying Roundup (32 oz/acre), Banville (6-8 ounces/acre, although this decreases depending on proximity to planting)

and Atrazine (2 pints/acre). RCR does not keep individual spray records, but this is consistent with the total records subsequently provided to RMA.

12.     RCR Farms had pre-irrigated in advance of planting.

13.     RCR Farms planted the Corn Acres in May of 2018. Unfortunately, drought conditions, hot wind and irrigation supply were much worse than expected. Even planting into pre-irrigated acreage became problematic because, due to the heat and the wind, the evaporation rates meant that the soil dried out so fast that either (a) the seed either would not germinate, or (b) the seed would germinate but desiccate before the roots could grow (i.e., the roots could not grow fast enough to keep up with moisture depletion. In June, there was over 14 inches of evapotranspiration, compared with only about ¼ inches of rain and six-inches of flood irrigation – thus, even if RCR had irrigated every acre twice, it still would not have been able to keep pace with the evaporation during this time period.

14.     By June 2018, there were very large areas where no plants came up at all. In other areas plants did emerge, but generated extremely poor stands – there was substantial plant death (this is reflected in the photographs of the fields, showing significant gaps where seeds did not emerge). However, for the areas with emergent corn, RCR Farms utilized Armezon, Roundup and Atrazaine to control for weeds. During this June time period, there were **no** weed problems.

15.      RCR Farms reviewed its acreage in July 2018, and noting the areas with no-emergence and other areas with a poor stand and crop death, concluded the corn was not going to make it to maturity – the delay in sprouting and slow growth meant that there were not going to be enough "growing degree" days before the average freeze time frame. Even the areas with

some emergence were not harvestable. Essentially, as of this time (and, in fact, quite earlier, there was no "crop" to care for). At this point, RCR Farms directed its crop insurance agent to file a Notice of Loss, which occurred on or about July 23, 2018.

16.     Within a few days, the AIP's adjusters were on site inspecting the fields. The adjusters agreed that the heat/wind damage caused the loss and that this was common in the area. In its Special Report, NAU's adjuster stated:

> The weather did not cooperate as it stayed dry and they had hot dry winds in June and the early part of July, see Exhibit 1 and 8, causing some fields of corn not to sprout and stressing other fields of corn.

17.     The NAU adjusters did notice some weeds, including "some fields"[1] with weed pressure, but found that this was not due to failure to follow good farming practices, but rather the insurable cause of loss:

> The chemicals used to control these weeds and grasses have to be incorporated for them to work. Rainfall is needed to incorporate these chemicals. **Because of the lack of rain**, he had to rely on the flood irrigation to incorporate the chemicals and that does not work well. **With the hot dry winds causing the weeds and grasses to shut down** the intake of substances through the leaves the chemicals do not work well, see Exhibit 10. By the time he received some rain in late July, the corn was at the stage where spraying would have caused damage to the corn.

Thus, even NAU agrees that weed control steps were mandated by the insurable cause of loss. **The NAU adjuster released the fields on that day**, essentially giving RCR Farms permission to destroy the few plants that had grown and prepare the ground for the next crop.

18.     On August 7, 2018, the TRO elected to participate in RCR Farms' claim with NAU as part of the RMA large claim review process. Consequently, NAU's adjuster informed

---

1.     The fact that only "some fields" are identified as having weed pressure further emphasizes the problem with TRO making a blanket determination as to weed control rather than doing an analysis on a unit-by-unit basis, as is required.

RCR Farms that it was withdrawing consent (which **is not allowed for in the Policy**) and directed RCR Farms not to do *anything* to the fields pending an RMA field inspection.

19.     RMA adjusters did not come to inspect the fields until **August 22, 2018** – nearly a month after the Notice of Loss and several weeks after the AIP adjuster instructed RCR Farms not to do anything with the fields. Furthermore, there was no continuing duty to provide care, because there was no "crop" to care for – the crop had already been destroyed by an insurable cause of loss.

20.     In the interim, a few large rains had fallen (in late July and early August). While this was not nearly sufficient to save the crop, it was more than sufficient to cause widespread weed growth. RCR Farms had not done any further weed control between July 23 and August 23 due to the fact that the crop was a total loss (with many areas of total non-emergence), and the fact that NAU had released the fields and instructed RCR Farms not to do anything with them (but to leave them intact). Additionally, much of the corn that did exist was pollinating, and during pollination no spraying can occur because it will abort the ears.

21.     As a practical matter, there was very little weed control that could be done between July 23 and August 22. The heavy rains prevented RCR Farms from spraying on most days because doing so after rains creates deep ruts in fields that ruin irrigation patterns. Additionally, during this period, wind had been very high, which often prevented spraying (spraying is prohibited if wind is over ten miles/hour). As a result, the weeds grew quickly during this period, accounting for the "heavy weed pressure" claimed by the TRO on the August 22 inspection.

22.     A comparison to the NAU photographs taken weeks early (and more proximate to the Notice of Loss) do not show heavy weed pressure, and certainly no weeds in excess of six feet tall. Moreover, in all of the photographs, the corn shown is either non-emergent or late-germinated due to the heat and wind, which would not have reached maturity prior to the end of the growing period. There is nothing to indicate that the weeds present during the August 22 inspection had any relation to RCR Farms' loss, and it is clear that the adverse weather conditions prohibited normal weed control measures. Therefore, any denial on this ground is improper.

23.     Nearly eight months later, on May 20, 2019, RMA issued a Good Farming Practice Determination (the "GFP Determination"), finding that RCR Farms had failed to follow good farming practices (as defined by the Policy). The GFP Determination essentially comprised two sub-determinations: a Seed Population Determination and a Weed Control Determination. Neither of these sub-determinations addressed or analyzed RCR Farms' farming practices on a unit-by-unit basis, as required, but instead made general findings for the over 2,500 insured acre operation.

24.     The TRO's GFP Determination was flawed in numerous respects. The TRO did not review the seeding rates on a unit-by-unit basis, which is problematic given the varying seeding rates and seed varieties actually employed. Instead, TRO applied the "recommended" rates contained in the Kansas Corn Production Handbook and Golden Harvest product information against RCR Farms' average plant population for the entire operation.  This is an improper standard for judging RCR Farms' farming practice; the question for purposes of a GFP Determination is not whether a particular seeding rate is "recommended," but rather is it

expected to meet that particular unit's individual yield guaranty. Moreover, the "recommendations" utilized by the TRO were inapplicable to RCR Farms' geographic area in Bent County, Colorado, which faces significantly greater water limitations.

25. On August 19, 2019, RCR Farms submitted a Request for Reconsideration to RMA per its procedures. Among other things, RCR Farms submitted extensive additional information regarding seeding rates and weed control, including unit-by-unit analyses of seeding varieties and rates, and the corresponding target yields for each unit (a necessary inquiry for purposes of GFP determinations, and which the TRO failed to make). The memoranda showed that in each case the seeding rates for the given variety were sufficient to hit the yield guaranty and, in fact, the reduced plant population resulted in higher proportional water availability, thereby increasing the likelihood of a higher yield.

26. Additionally, the GFP Determination cited to a "recommendation" for a Syngenta seed variety of 28,000 plants per acre. This "recommendation" is not the standard for whether RCR Farms' practices constituted good farming practices, as it has no analysis of the impact failing to follow the recommendation would have vis-à-vis RCR Farms' yields.

27. More importantly, Mr. Heggenstaller of Syngenta, clarified that the "recommendation" is not applicable to water-limited environments such as those present in Bent County, Colorado, stating:

> Syngenta does not recommend seeding rates greater than 24,000 seeds/acre for dryland and limited irrigation environments, such as the situation described by RCR Farms. **The technical product information published for Syngenta seed products is intended for fully irrigated and non-water limited environments**. Optimum plant populations should always account for yield environment, with reduced populations recommended for fields like those managed by RCR farms, which have an average APH below 150 bu/acre.

8

28.     Given the nature of the "recommendations," TRO's reliance on them as the standard for good farming practices was misplaced. Per the seeding rates for RCR Farms' units, each was planted to a density that would be expected to reach RCR Farms' yield guaranty but for the insurable cause of loss that occurred during the crop year.

29.     On November 22, 2019, RMA issued a Reconsideration Determination, in which it upheld its prior GFP Determination. The Reconsideration Letter failed to remedy the numerous fatal defects of the underlying GFP Determination.

### Request for Judicial Review, Declaratory and Injunctive Relief

WHEREFORE, RCR Farms requests that the Court:

1.     Pursuant to the standards set forth in the Administrative Procedure Act, 5 U.S.C. §§ 701-06, Plaintiff asks the Court to review RMA's GFP Determinations.  RCR Farms asks the Court to determine and declare that these decisions were incorrect, unlawful, and in violation of the applicable standards set forth in 5 U.S.C. § 706.  Specifically, RCR Farms requests that the Court enter judgment declaring that the GFP Determination was arbitrary and capricious.

2.     RCR Farms further requests that the Court enter an order granting RCR Farms injunctive relief against the FCIC compelling it to retract said determinations, reinstate the Acres and direct RCR Farms' Approved Insurance Provider, NAU, to pay an indemnity for the Acres pursuant to payment methodology set forth in the Policies.

3.     RCR Farms also requests that the Court permit discovery and hold an evidentiary hearing in this matter because (1) the agency action is not adequately explained and cannot be reviewed properly without considering the cited materials; (2) the record is deficient because the agency ignored relevant factors it should have considered in making its decision; (3) the agency

considered factors that were left out of the formal record; and (4) the case is of a complexity that additional evidence will better enable the Court to understand the issues.

    4.    RCR Farms requests a jury trial on all issues so triable.

    5.    RCR Farms requests that the Court award them with their attorney's fees, costs and such further relief as the Court deems just and proper.

    DATED this 4th day of June, 2020.

Respectfully submitted,

*s/Jeff L. Todd*
David B. Seserman
Seserman Law LLC
3900 E. Mexico Ave.., Suite 300
Denver, CO 80210
Telephone:  (303) 900-2406
FAX:         (303) 670-0990
Email: dseserman@seserman.law

and

Jeff L. Todd, OBA #17713
Jeremiah Buettner, OBA #21615
McAfee & Taft A Professional Corporation
10th Floor, Two Leadership Square
211 North Robinson
Oklahoma City, OK 73102-7103
Telephone:  (405) 235-9621
FAX:  (405) 235-0439
Email: jeff.todd@mcafeetaft.com
      jeremiah.buettner@mcafeetaft.com

ATTORNEYS FOR PLAINTIFF

Plaintiff's Address:
RCR Farms, LLC
16526 County RD LL
Las Animas, CO 831054