IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Raymond P. Moore

Civil Action No. 20-cv-01602-RM

RCR FARMS, LLC,

    Petitioner,

v.

FEDERAL CROP INSURANCE CORPORATION,

    Respondent.

_____

**ORDER**
_____

This crop insurance case is before the Court on Petitioner's Complaint for Judicial Review and Declaratory Relief (ECF No. 1), requesting that the Court set aside the determination by Respondent's administering agency, Risk Management Agency ("RMA"), that Petitioner failed to follow good farming practices ("GFP") planting its 2018 corn crop. The Petition has been fully briefed (ECF Nos. 17, 19, 20) and is ripe for review. It is denied for the reasons below.

**I.    BACKGROUND**

In May 2018, Petitioner planted nearly 2,500 acres of corn on its farm in Bent County, Colorado. Under a program authorized by the Federal Crop Insurance Act and carried out by Respondent, Petitioner obtained federally subsidized crop insurance through an approved insurance provider. *See* 7 U.S.C. § 1502(b)(2). In July 2018, Petitioner concluded that the crop would likely fail and filed a notice of loss stating that the cause of the loss was "hot wind."

(Admin. R. 247.)

In May 2019, RMA issued its GFP determinations, finding that Petitioner failed to follow GFP pertaining to seed population and weed control. (*Id.* at 1097-1105.) To satisfy the GFP requirement under its policy, Petitioner was obligated to use production methods generally recognized by agricultural experts for the area "to produce the insured crop and allow it to make normal progress toward maturity and produce at least the yield used to determine the production guarantee or amount of insurance." (*Id.* at 1097.) With respect to seed population, RMA determined that Petitioner's stated seeding rate of 22,500 plants per acre was inadequate for the seed variety that comprised over 25 percent of the seed it purchased. (*Id.* at 1100.) RMA noted that the product information sheet for that variety recommended plant populations not lower than 28,000 seeds per acre. In addition, RMA cited the Kansas Corn Production Handbook, which recommended 24,000 plants per acre where irrigation was limited, and a Nebraska publication, which recommended a plant population of 26,000 plants per acre. (*Id.* at 1102.) With respect to weed control, RMA determined that—based on the weed control guide and the Kansas Corn Production Handbook—Petitioner's stated application of a weed control measure in early July was "too late for the critical period of weed control." (*Id.* at 1103.)

Petitioner requested that RMA reconsider its GFP determination, and, after considering additional information from Petitioner and its insurance provider, RMA completed the reconsideration process and upheld its GFP determination in November 2019. With respect to seed population, RMA used the information Petitioner provided to calculate a "weighted average seeding rate of 17,822 seeds per acre." (*Id.* at 1465.) RMA compared this rate with Petitioner's seeding rate for 2017, which Petitioner described as an "exceptionally good year." (*Id.*) That

year, Petitioner's seeding rate was 25,345 seeds per acre, and its average weighted yield was 158 bushels.  (*Id.*)  Given that Petitioner was trying to meet a production guarantee of 147 to 177 bushels in 2018, RMA concluded that planting 30 percent fewer seeds than it did in 2017 was not consistent with GFP.  With respect to weed control, RMA noted that Petitioner failed to provide records regarding the timing and application rates for the chemicals it reported using.  (*Id.* at 1467.)  In addition, RMA considered photographic evidence showing weed pressure on Petitioner's insured acreage while neighboring fields had little weed pressure and mature corn.  (*Id.*)  Thus, RMA concluded Petitioner did not follow GFP for weed control.

This lawsuit followed.

## II.    LEGAL STANDARD

Pursuant to 7 U.S.C. § 1508(a)(3)(B)(iii)(II), RMA's GFP determinations may not be reversed or modified by this Court unless they are found to be arbitrary or capricious.  The Court reviews such agency decisions under the deferential Administrative Procedures Act standard of review, assessing whether the agency examined the relevant data and articulated a satisfactory explanation for its decision.  *See Jagers v. Fed. Crop Ins. Corp.*, 758 F.3d 1179, 1184 (10th Cir. 2014); *see also* 5 U.S.C. § 706.  Agency action will be set aside if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.  *Jagers*, 758 F.3d at 1184 (quotation omitted).  The scope of review is narrow, and it is not the Court's role to substitute its own judgment for that of the agency on matters within its expertise.  *See id.*

**III.    DISCUSSION**

Petitioner contends the GFP determinations are arbitrary and capricious because RMA (1) failed to analyze whether Petitioner employed GFP for its corn crop on a unit-by-unit basis, (2) applied an improper standard for determining whether the seeding rates it utilized were consistent with GFP, and (3) relied on photographs that were taken weeks after Petitioner submitted its notice of loss, while failing to provide pertinent information regarding the photographs.  Respondent argues RMA's final agency decision should be affirmed.

**A.    Unit-by-Unit Assessment**

Petitioner argues that its corn crop consisted of twelve "units" and that RMA's failure to make its GFP determinations based on a unit-by-unit assessment was arbitrary and capricious.  Citing the policy itself, a GFP Handbook, and a GFP Bulletin, Petitioner argues that a unit-by-unit assessment was required.  One problem with this argument is that none of these sources expressly sets forth such a requirement.  Although Petitioner cites excerpts from each source that appear to be consistent with a unit-by-unit assessment, these excerpts do not establish that RMA's GFP determinations here violated any specific regulation or policy.

Another problem with Petitioner's argument is that Petitioner insured his corn crop as an "enterprise unit," defined in the policy as "[a]ll insurable acreage of the same insured crop or all insurable irrigated or non-irrigated acreage of the same insured crop in the county in which you have a share" (Admin. R. at 5), provided certain requirements are met.  And Petitioner submitted a single notice of loss for his corn crop, citing a single cause of the loss.  (*Id.* at 247.)  Under these circumstances, the Court cannot conclude RMA acted arbitrarily or capriciously by assessing Petitioner's corn crop as a whole.

Further, Petitioner has not shown that a unit-by-unit assessment would have changed the RMA's GFP determinations. Petitioner's policy provides that "[p]olicyholders are responsible for establishing that the farming practice in question was a good farming practice." (*Id.* at 60.) Petitioner has not established that it followed GFP with respect to seed population or weed control on any specific unit that comprised part of his corn crop. In its reconsideration letter, RMA concluded that Petitioner's weighted average seeding rate was significantly lower than the stated rate which formed the basis for its initial GFP determination on seed population. And Petitioner concedes that it "does not keep individual spray records" (ECF No. 17 at 7-8), leaving it without adequate records to refute the GFP determination on weed control.

Finally, to the extent Petitioner's argument relies on the *Accardi* doctrine, which requires an agency to adhere to policies and regulations it promulgates, *see Jagers*, 758 F.3d at 1186, the Court finds such reliance is misplaced in this context. Again, Petitioner cites no promulgated regulations that RMA allegedly violated. Nor is it clear that it violated any of its policies or procedures. Moreover, courts in this Circuit have concluded that the *Accardi* doctrine applies only when an individual's due process interests are implicated. *See Barrie v. Fed. Aviation Admin.*, 16 F. App'x 930, 934 (10th Cir. 2001); *Shepard v. Rangel*, No. 12-cv-01108-RM-KLM, 2014 WL 7366662, at *23 (D. Colo. Dec. 24, 2014). Petitioner has made no such showing here.

Accordingly, the Court declines to find that RMA acted arbitrarily or capriciously by failing to make its GFP determinations on a unit-by-unit basis.

  **B.**  **Standard for Assessing Seeding Rates**

Petitioner next argues RMA applied an improper standard to conclude that Petitioner's reduced seeding rates were not consistent with GFP. But Petitioner has not shown that RMA's

5

reliance on product information sheets or the Kansas and Nebraska publications it consulted was inappropriate. Petitioner also has not shown that RMA incorrectly calculated its weighted average seeding rate to be 17,822 seeds per acre or that its agronomy consultant or anyone else recommended seeding rates as low as it implemented. Instead, it has adduced some evidence that "reduced" seeding rates may be appropriate in some water-limited environments. (*See* ECF No. 17 at 22.) But this evidence does not establish that RMA failed to examine relevant data or articulate a satisfactory explanation for its GFP determinations. Even if the Court were persuaded by such evidence, its role at this stage is not to substitute its judgment for that of the RMA on a matter within its expertise.

Therefore, the Court does not find RMA acted arbitrarily or capriciously in determining that Petitioner's seeding rates were not consistent with GFP.

**C.    Reliance on Photographic Evidence**

Finally, Petitioner argues RMA improperly relied on photos taken nearly a month after it filed its notice of loss when it concluded that Petitioner did not follow GFP with respect to weed control. For purposes of its initial GFP determination, RMA accepted information Petitioner provided about its herbicide purchases as well as documentation to support a weed control measure applied in early July but nevertheless found the application was too late for the critical period of weed control relative to Petitioner's planting dates. (Admin R. at 1102-03.) In its reconsideration letter, RMA again noted that "[n]o records were provided regarding the timing or application rates of these chemicals." (*Id.* at 1467.)

As the policyholder, Petitioner bore the burden of establishing that its weed control measures were consistent with GFP. Thus, although RMA's reconsideration letter cites

6

"photographic evidence" in support of its GFP determination (which includes photos from August 1 and August 22), it also cites Petitioner's lack of records on weed control measures, and the latter basis alone suffices to support the GFP determination in this case.

## IV. CONCLUSION

Accordingly, the Court DENIES Plaintiff's Petition (ECF No. 1), and this case is DISMISSED WITH PREJUDICE.

DATED this 22nd day of November, 2021.

BY THE COURT:

_____
RAYMOND P. MOORE
United States District Judge